1
2
3
4
5

UNITED STATES DISTRICT COURT

6

SOUTHERN DISTRICT OF CALIFORNIA

7

8    PATRICE BAKER, GLORIA COOPER,
     LESLIE DUDLEY LETITIA FLYNN,
9    KATHLEEN MACLEOD, EILEEN
     OSBORNE AND KHALADA SALAAM-
10   12 ALAJI, individuals,
11
12                              Plaintiffs,

13   v.

14   CITY OF SAN DIEGO, et al.,

15                              Defendants.
16

Case No.:  19-CV-1013-AJB-BLM

**ORDER:**

**(1) GRANTING MOTION OF
DEFENDANTS COUNTY OF SAN
DIEGO AND COUNTY
SUPERVISORS GREG COX,
DIANNE JACOB, KRISTIN
GASPAR, NATHAN FLETCHER,
AND JIM DESMOND IN THEIR
OFFICIAL CAPACITY TO DISMISS
PLAINTIFF'S COMPLAINT;**

17
18   **(2) GRANTING IN PART AND
     DENYING IN PART CITY OF SAN
19   DIEGO'S MOTION TO DISMISS;
     AND**
20
21   **(3) GRANTING IN PART AND
     DENYING IN PART DEFENDANTS
22   SAN DIEGO HOUSING
     COMMISSION AND RICHARD C.
23   GENTRY'S MOTION TO DISMISS
     PLAINTIFFS' COMPLAINT UNDER
24   FRCP 12(b)(1), (6) and (7)**

25
     (Doc. Nos. 26, 27, 29)
26
27
28

1

Presently before the Court are Defendants County of San Diego, and County Supervisors Greg Cox, Dianne Jacob, Kristen Gaspar, Nathan Fletcher, and Jim Desmond motion to dismiss Plaintiffs' complaint, (Doc. No. 26), Defendant City of San Diego motion to dismiss, (Doc. No. 27), and Defendants San Diego Housing Commission and Richard C. Gentry's motion to dismiss Plaintiffs' complaint under FRCP 12(b)(1), (6) and (7), (Doc. No. 29). Plaintiffs filed oppositions to each motion to dismiss, (Doc. Nos. 34, 35, 36), and Defendants each filed a reply, (Doc. Nos. 40, 41, 42). For the reasons set forth below, the Court **GRANTS** the County's motion to dismiss, **GRANTS in part** and **DENIES in part** the City's motion to dismiss, and **GRANTS in part** and **DENIES in part** SDHC's motion to dismiss.

## BACKGROUND

The following facts are taken from Plaintiffs' complaint and construed as true for the limited purpose of resolving this motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Defendants County of San Diego (the "County"), City of San Diego (the "City"), City of San Diego Housing Authority, and San Diego Housing Commission (the "SDHC") (collectively referred to as "Defendants") have allegedly in combined efforts denied equal housing and created a disparate impact on minorities in San Diego. (Doc. No. 1 ¶ 1.) As alleged, Defendants' concentration of low-income projects in select minority neighborhoods is perpetuating housing segregation and denying equal access to housing opportunities for minorities. (*Id.* ¶ 2.) Defendants' combined efforts have disproportionally affected San Diego neighborhoods with 80% or more minorities ("Affected Communities"). (*Id.* ¶ 3.) Encanto and Southeastern San Diego are two neighborhoods within the Affected Communities. (*Id.*) Plaintiffs are local residents of the Affected Communities. (*Id.* ¶ 4.)

The City updated and adopted new zoning policies that would increase the Affected Communities' residential capacity. (*Id.* ¶ 7.) SDHC used the new zoning policies to implement and develop low-income housing projects in the Affected Communities. (*Id.*)

The City has also allowed the County to develop the Southeastern Live Well Center in the Affected Communities. (*Id.*) It is further alleged that SDHC administers a voucher system that disproportionally concentrates low-income minorities in the Affected Communities. (*Id.* ¶ 9.)

Plaintiffs allege that by concentrating low-income housing, and other similar projects, in only minority neighborhoods, Defendants have perpetuated high-poverty rates, low educational achievement, and stunted economic development in the Affected Communities, which are neighborhoods with over 80% minorities. (*Id.* ¶ 13.) Furthermore, Plaintiffs allege that Defendants are perpetuating segregated neighborhoods in San Diego. (*Id.* ¶ 14.) Plaintiffs allegedly bring this suit to reverse the concentration of poverty the Affected Communities are currently experiencing as a result of Defendants' increase of low-income projects. (*Id.* ¶ 15.)

On May 30, 2019, Plaintiffs filed a complaint alleging violations of Federal Fair Housing Act, 42 U.S.C. § 1983, and California Fair Employment and Housing Act. (*See generally* Doc. No. 1.) On August 1, 2019, the County and the City filed a motions to dismiss Plaintiffs' complaint. (Doc. Nos. 26, 27.) On August 9, 2019, SDHC filed a motion to dismiss Plaintiffs' complaint. (Doc. No. 29.) This Order follows.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true "merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend, unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## **DISCUSSION**

The Court will address each of the Defendants' motions to dismiss in turn.

A.     County of San Diego's Motion to Dismiss

The County of San Diego (the "County") argues that the County Supervisors should be dismissed and that Plaintiffs' three causes of action against the County fail to state a claim.

*i.     Requests for Judicial Notice*

The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Technologies, Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (holding that legislative history is properly the subject of judicial notice).

The County requests judicial notice of the following documents: Exhibit 1: The publicly-posted Agenda Item No. 12 for the June 19, 2018 County of San Diego Board of Supervisors regular meeting; and Exhibit 2: The minutes of the June 19, 2019 County of San Diego Board of Supervisors regular meeting, with respect to the Board of Supervisors'

1    vote on Agenda Item No. 12. (Doc. No. 26-2.)

2           Plaintiffs request judicial notice of the following documents: Exhibit 1: Minute

3    Order passed by Defendant County of San Diego Board of Supervisors' on July 24, 2019

4    meeting; Exhibit 2: Initial California Environment Quality Assurance report for Defendant

5    County's construction of the Southeastern San Diego Live Well Center; and Exhibit 3:

6    Meeting Agenda for Defendant County of San Diego Board of Supervisors' meeting on

7    March 12, 2019. (Doc. No. 34-2.)

8           However, the Court does not rely on these documents in reaching its conclusion

9    below. Accordingly, the Court **DENIES** as moot both the County's and Plaintiffs' requests

10   for judicial notice.

11          *ii.    Dismissal of County Supervisors*

12          Plaintiffs have named the County of San Diego as a defendant as well as the current

13   members of the County's Board of Supervisors in their official capacity only. (Doc. No. 1

14   ¶ 24.) "An official-capacity suit is, in all respects other than name, to be treated as a suit

15   against the entity. It is not a suit against the official personally, for the real party in interest

16   is the entity." *Enriquez v. City of Fresno*, No. CV F 10-0581 AWI DLB, 2010 WL 2490969,

17   at *5 (E.D. Cal. June 16, 2010) (citation omitted); *see also Luke v. Abbott*, 954 F.Supp.

18   202, 204 (C.D. Cal. 1997) (noting that "[i]f both [the official capacity officer and the local

19   government entity] are named, it is proper upon request for the Court to dismiss the official-

20   capacity officer, leaving the local government entity as the correct defendant.").

21   Accordingly, the Court **DISMISSES** Plaintiffs' complaint as to the five individual County

22   Supervisors.

23          *iii.    Federal Fair Housing Act*

24          Plaintiffs first cause of action is for violations of the federal Fair Housing Act

25   ("FHA"). (Doc. No. 1 ¶¶ 100–04.) The FHA prohibits discrimination in the "sale or rental

26   of a dwelling, or in the provision of services or facilities in connection therewith," "because

27   of race, color, religion, sex, familial status, or national origin." *See* 42 U.S.C. § 3604(b).

28          The County argues that the Southeastern Live Well Center has no housing

5

component and thus, the County does not and will not sell or rent housing, is not a real estate agent, and is not providing housing construction financing. (Doc. No. 26-1 at 10.) However, Plaintiffs argue that the County's construction of the Southeastern Live Well Center violates the FHA because the project will perpetuate housing segregation. (Doc. No. 34 at 15.) Furthermore, Plaintiffs assert that the City authorized the land to be used for building low-to-moderate housing, school facilities, a park and recreational area, an enterprise zone, or an infill zone. (*Id.*)

Plaintiffs rely on several cases to support the argument that building the Southeastern Live Well Center will violate the FHA because it perpetuates housing segregation. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc. ("ICP VI")*, 135 S. Ct. 2507 (2015); *Traficante v. Metro Life Ins. Co.*, 409 U.S. 205 (1972); *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493 (9th Cir. 2016); and *Committee Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690 (9th Cir. 2009). However, with the exception of *Committee Concerning Cmty. Improvement*, these cases all involve the sale or rental of dwellings or the development of dwellings for sale or rent. In *Committee Concerning Cmty. Improvement*, the city and county were sued for discrimination against minorities based on police and fire response time to the subject dwellings and lack of sewer service to the dwellings. *See generally* 583 F.3d 690. Plaintiffs fail to cite a case that finds a FHA violation that does not relate to the sale or rental of dwellings, or the provision of services or facilities in connection with such dwellings.

Second, Plaintiffs argument that construction of the Southeastern Live Well Center violates the FHA because it could have been used for low-to-moderate housing, school facilities, a park and recreational area, an enterprise zone or an infill zone is also unfounded. Property is often zoned for multiple uses. If the Court accepted Plaintiffs' argument, this could potentially open the floodgates to more FHA litigation regarding real estate developments that are not being used for housing purposes.

Accordingly, the Court **DISMISSES** Plaintiffs' first cause of action against the County.

iv.    *42 U.S.C. § 1983*

Plaintiffs' Section 1983 claim is premised on alleged violations of "federal and state housing laws" and the Equal Protection Clause of the United States Constitution. (Doc. No. 1 ¶ 107.)

A Section 1983 claim may not be based on a violation of state law. *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007). Accordingly, Plaintiffs' claim fails to extent that it is based on state housing laws.

Plaintiffs' complaint also alleges that violations of 42 U.S.C. § 3608(e)(5) and 24 C.F.R. § 903.15(d) as the basis for its Section 1983 claim. (Doc. No. 1 ¶ 103.) As to 24 C.F.R. § 903.15(d), violations of a regulation may not form the basis of a Section 1983 claim. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003). As to 42 U.S.C. § 3608(e)(5), the "majority of courts have determined that a plaintiff cannot bring a section 1983 claim based on a violation of 42 U.S.C. § 3608(e)(5)." *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. 07-12018-DPW, 2018 WL 4595369, at *16–17 (D. Mass. Sept. 30, 2008). Furthermore, the Court agrees that this statute is inapplicable to the County as it governs the HUD Secretary's administration of public housing policies.

Regarding Equal Protection claims, Plaintiffs are alleging Defendants intentionally concentrate poverty in select neighborhoods based on the race of residents in the Affected Communities. (Doc. No. 34 at 17.) Plaintiffs allege that the County's decision to build the Southeastern Live Well Center has a disparate-impact on minorities in the Affected Communities. Specifically, Plaintiffs allege that the Southeastern Live Well Center will displace housing, stunt commercial development, deflate local property values, and will perpetuate the racial segregation in the City. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee*, 250 F.3d at 686 (citation omitted). "Where the challenged governmental policy is 'facially neutral,' proof of its

disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Id.* However, the allegations here do not show some invidious or discriminatory purpose underlying the County's plan to build the Southeastern Live Well Center. The Southeastern Live Well Center is an office complex that will make it more convenient for the residents in the area to access County services.

The complaint also fails to identify a County policy or custom that directed a constitutional or federal-law violation. *See Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978).

Accordingly, the Court **DISMISSES** Plaintiffs' Section 1983 claims against the County.

### v.    *California's FEHA*

As Plaintiffs' claim under the FHA fails, Plaintiffs claim for violation of California's Fair Employment and Housing Act ("FEHA") also fails. Further, it is unclear to the Court whether Plaintiffs' claim under the FEHA is even alleged against the County. Accordingly, the Court **DISMISSES** Plaintiffs' FEHA claim against the County.

### B.    City of San Diego's Motion to Dismiss

The City of San Diego (the "City") argues that Plaintiffs do not have standing, Plaintiffs' claims are time barred, and Plaintiffs have failed to state a claim against the City.

### i.    *Requests for Judicial Notice*

The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Technologies, Inc.*, 499 F.3d at 1052 (quoting *Lee*, 250 F.3d at 689); *see also Anderson*, 673 F.3d at 1094 n.1 (holding that legislative history is properly the subject of judicial notice).

The City requests judicial notice of the following documents: Exhibit 1: Excerpts of the Encanto Community Plan; Exhibit 2: Excerpts of the Southeastern San Diego Community Plan; Exhibit 3: Excerpts of the Pacific Beach Community Plan; Exhibit 4:

Excerpts of the La Jolla Community Plan; and Exhibit 5: Excerpts of the Ocean Beach Community Plan. (Doc. No. 27-2.)

Plaintiffs request judicial notice of the following documents: Exhibit 1: The City's Resolution No. 311500 passed on January 11, 2018; Exhibit 2: The City's Resolution No. 311537 passed on February 7, 2018; Exhibit 3: The City's Resolution No. 312218 passed on March 1, 2019; Exhibit 4: The City's Resolution No. 311635 passed on April 19, 2018; Exhibit 5: The City's Resolution No. 312485 passed on April 19, 2018; Exhibit 6: The City's Resolution No. 312600 passed on August 15, 2019; Exhibit 7: The City's Resolution No. 312602 passed on August 15, 2019; Exhibit 8: Minute Order passed by the County Board of Supervisors' on July 24, 2019 meeting; Exhibit 9: Initial California Environmental Quality Assurance report for the County's construction of the Southeastern San Diego Live Well Center; Exhibit 10: Board Minutes of the County's March 12, 2019 meeting; and Exhibit 11: The City's 2018 Annual Housing Inventory Report. (Doc. No. 35-2.)

However, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES** as moot both the City's and Plaintiffs' requests for judicial notice.

ii.    *Standing*

The City argues that Plaintiffs do not have standing because they have not alleged a concrete and particularized injury traceable to the challenged conduct. (Doc. No. 27 at 12.) To demonstrate Article III standing under the United States Constitution, "[a] plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *overruled on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *see also Raines v. Byrd*, 521 U.S. 811 818–19 (1997).

Plaintiffs assert that they do in fact have standing because they are local residents of the communities that are being adversely affected by the City's concentration of poverty. The Court agrees that Plaintiffs have standing. "[A] congressional intent to define standing

9

as broadly as is permitted by Article III of the Constitution." *Trafficante*, 409 U.S. at 209; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (courts are prevented from "creat[ing] prudential barriers to standing" in FHA suits.) "[T]he proponents of the legislation emphasized that those who were not the direct objects of discrimination had an interest in ensuring fair housing, as they too suffered." *Trafficante*, 409 U.S. at 210. Furthermore, the Supreme Court has recognized that an entire community had standing to challenge realtors under the FHA because "[t]he adverse consequences attendant upon a 'changing' neighborhood can be profound." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). Here, just as in *Bellwood*, Plaintiffs have alleged that they are residents of the Affected Communities and have alleged that their communities are suffering from the City's alleged violations.

The City further argues that Plaintiffs failed to allege a causal connection and that the alleged injury can be redressed by a favorable decision in this litigation. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). However, Plaintiffs do allege a causal connection. Plaintiffs allege that their communities are impacted by the City's alleged violations. Furthermore, Plaintiffs have also alleged that a favorable outcome of this litigation will redress the alleged injury as blocking future affordable housing projects would prevent further segregation.

Accordingly, the Court **DENIES** the City's motion to dismiss on standing.

### iii.     FHA Statute of Limitations

The FHA statute of limitations requires aggrieved parties to file a civil action "not later than two years after the occurrence or termination of an alleged discriminatory housing practice to obtain appropriate relief." 42 U.S.C. § 3613(a)(1)(A). The Ninth Circuit recognized, under the FHA, "[t]he continuing violations doctrine permits a plaintiff to sue for all discriminatory acts that occurred during the limitations period, even if the policy or other event giving rise to the discrimination occurred outside the limitations period." *Comm. Concerning Cmty. Improvements*, 583 F.3d at 702. To establish this the "plaintiff must show that a pattern or practice of discrimination creates an ongoing violation." *Id.*

The City asserts that Plaintiffs' claim under the FHA is time barred because the alleged discriminatory policy was adopted in 2015 and 2016. However, Plaintiffs have alleged that the City engaged in a pattern and practice of alleged discrimination of concentrating majority of the low-income housing in minority neighborhoods that are already suffering from high-poverty rates. The City argues that subsequent actions to approve affordable housing projects allowed under the alleged discriminatory policy do not constitute a continuing violation. However, this is exactly what Plaintiffs have alleged and established in their complaint. Accordingly, Plaintiffs' FHA claim is not time barred.

### iv.    Section 1983 Statute of Limitations

Equal protection claims under Section 1983 are subject to the state statute of limitations for personal injury claims. *Comm. Concerning Cmty. Improvements*, 583 F.3d at 701. In California, the applicable statutory time period is two years. Cal. Code Civ. Proc. § 335.1. The City again alleges that the alleged discriminatory policy was adopted in 2015 and 2016. However, as explained above, Plaintiffs have alleged and established in their complaint that there is a continuing violation. Accordingly, Plaintiffs' Section 1983 claim is not time barred.

### v.    FEHA Statute of Limitations

FEHA provides that no complaint for any violation of its provisions may be filed "after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred," with an exception for delayed discovery. Cal. Gov. Code §§ 12960, 12980. The City again alleges that the alleged discriminatory policy was adopted in 2015 and 2016. However, as explained above, Plaintiffs have alleged and established in their complaint that there is a continuing violation. Accordingly, Plaintiffs' FEHA claim is not time barred.

### vi.    Sufficient Specificity of an Offending Discriminatory Policy

The City argues that Plaintiffs cannot state a viable claim because they have not identified an offending discriminatory policy with sufficient specificity. (Doc. No. 27 at 16.) Under the FHA, it is unlawful to "make available or deny" a "dwelling" to a person

11

because of that person's race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604. A plaintiff can establish a FHA violation under a theory of disparate treatment or disparate impact. Disparate treatment is intentional discrimination. *See Ave. 6E Invs., LLC*, 818 F.3d at 502. Disparate impact discrimination includes "actions by private or governmental bodies that create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason." *Id.* at 503. To prove a disparate impact claim, the plaintiff must identify a facially-neutral policy that has resulted in disparate impact. *ICP VI*, 135 S. Ct. at 2522–24. "A disparate-impact claim relying on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement is important in ensuring that defendants do not resort to the use of racial quotas." *Id.* at 2512. "A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id.* at 2523 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653, 109 S. Ct. 2115 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e–2(k)).

Plaintiffs allege that the City has engaged in a pattern and practice of concentrating extremely-low, very-low, and low-income housing in neighborhoods that are predominately minorities. (Doc. No. 35 at 25.) Plaintiffs assert that Defendants in general have a pattern and practice of streamlining development of low-income housing in the Affected Communities. (*Id.* at 26.) Plaintiffs reference the City's 2018 Annual Housing Inventory Report to evidence the statistical data. (*Id.*) Furthermore, Plaintiffs allege that the Community Plans are the policy they are challenging. However, there are no allegations that show this policy caused the statistical disparity or that the City's housing policies do not otherwise have a legitimate basis. Plaintiffs also fail to allege any casual connection between waiving development impact fees and the statistical data. Plaintiffs have failed to establish a robust causal connection between the statistical disparity and the City's policy. Accordingly, the Court **DISMISSES** Plaintiffs' FHA claims against the City.

### vii.    FEHA Administrative Remedies

The City alleges that Plaintiffs' FEHA claim fails because Plaintiffs did not exhaust their administrative remedies. (Doc. No. 27 at 19.) Under the FHA there is no requirement to exhaust administrative remedies and an aggrieved person may file directly in federal or state court. 42 U.S.C. § 3613(a)(2). The California "Legislature sought to make the FEHA 'substantially equivalen[t]' [citation] to the federal Fair Housing Act and its amendments …" *Konig v. Fair Employment and Housing Comm'n*, 28 Cal. 4th 743, 749 (2002). Thus, there is no requirement to exhaust administrative remedies before challenging the FEHA.

The City relied upon several cases to establish that there is an administrative requirement. *See Albelleira v. District Court of Appeal*, 17 Cal. 2d 280, 292 (1941); *Okoli v. Lockheed Tech. Operations*, 36 Cal. App. 4th 1607, 1612 (1995); *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 492 (1996). However, these cases all deal with employment issues rather than violations of racial segregation. Accordingly, the Court **DENIES** the City's motion to dismiss regarding the FEHA claim.

### viii.    Dismissal of Individual City Council and Housing Authority Officials

Plaintiffs have named the City as a defendant as well as the individual City Council and Housing Authority members in their official capacity only. "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Enriquez*, No. CV F 10-0581 AWI DLB, 2010 WL 2490969, at *5; *see also Abbott*, 954 F. Supp. at 204 (noting that "[i]f both [the official capacity officer and the local government entity] are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant."). Accordingly, the Court **DISMISSES** Plaintiffs' complaint as to the individual City Council and Housing Authority members.

/ / /

/ / /

/ / /

C.      San Diego Housing Commission and Richard C. Gentry's Motion to Dismiss

        The San Diego Housing Commission ("SDHC") argues that it cannot be held liable for tax credit projects, Plaintiffs fail to state a claim for violations of FHA, Section 1983, and FEHA, Plaintiffs causes of action are time barred, Plaintiffs do not have standing, HUD is an indispensable party, and Richard C. Gentry and each board members should be dismissed.

        i.      *Requests for Judicial Notice*

        The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Technologies, Inc.*, 499 F.3d at 1052 (quoting *Lee*, 250 F.3d at 689); *see also Anderson*, 673 F.3d at 1094 n.1 (holding that legislative history is properly the subject of judicial notice).

        SDHC requests judicial notice of the following documents: Exhibit 1: The Amended and Restated Moving to Work Demonstration Agreement ("MTW Agreement") entered into on January 14, 2009 between SDHC and U.S. Department of Housing and Urban Development ("HUD"); Exhibit 2: Letter from HUD to SDHC, dated April 14, 2016 extending the MTW Agreement under the end of SDHC's Fiscal Year 2028; Exhibit 3: Relevant portions of SDHC's MTW Annual Plans for Fiscal Years ("FY") 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, and 2018; Exhibit 4: Relevant portions of SDHC's MTW Annual Plan for FY 2019 (July 1, 2018 – June 30, 2019); Exhibit 5: Email from HUD to Suket Dayal, dated February 1, 2018; Exhibit 6: SDHC's Choice Communities Initiative under the MTW Program updated on April 23, 2019; Exhibit 7: Relevant portions of SDHC's Executive Summary, dated May 4, 2010, and Board Report, dated April 26, 2018 regarding SDHC's FY 2019 Budget; Exhibit 8: Relevant portions of Executive Summary, dated June 14, 2019, Board Report, dated June 6, 2019 regarding FY 2020 Section 8 Administrative Plan; Exhibit 9: Section 204 (Public Housing/Section 8 Moving to Work Demonstration Program) of The Omnibus Consolidated Rescissions and Appropriations Act of 1996 (Public Law 104-134, 110 Stat 1321) from U.S. Government

Publishing Office; Exhibit 10: Relevant Portions of HUD's Small Area Fair Market Rents rule from Volume 81 of the Federal Register, pages numbers 80567 & 80578 (81 FR 80567) from U.S. Government Publishing Office; Exhibit 11: HUD Notice PIH 2018-01 issued January 7, 2018, regarding "Guidance on Recent Changes in Fair Market Rent (FMR), Payment Standard, and Rent Reasonableness Requirements in the Housing Choice Voucher Program"; Exhibit 12: Relevant portions of the City of San Diego Housing Inventory Report 2018; and Exhibit 1 to SDHC's reply motion: A true and correct copy of San Diego Municipal Code § 98.0301 et seq. (Doc. Nos. 29-2, 42-1.)

However, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES** as moot SDHC's requests for judicial notice.

### ii. *Tax Credit Projects*

SDHC states that Plaintiffs incorrectly allege it has the sole discretion to approve projects for tax credits. (Doc. No. 29-1 at 15.) "Internal Revenue Code Section 42 provides for state administration of the Federal Low-Income Housing Tax Credit Program. California Health and Safety Codes 50199.4 through 50199.22, and California Revenue and Taxation Code Sections 12205, 12206, 1757.5, 17058, 23610.4 and 23610.5 establish the California State Program and designate the CTCAC as the Housing Credit Agency to administer both the Federal and State Housing Tax Credit programs in California." Cal. Code Regs., tit. 4, § 10300. Accordingly, the ultimate determination for the criteria for review and approval of applications for tax credits is the California Tax Credit Allocation Committee ("CTCAC"), not SDHC. Thus, to the extent Plaintiffs seek to hold SDHC liable for the alleged disparate impact of tax credit project is **DISMISSED**.

### iii. *Federal Fair Housing Act*

SDHC alleges that Plaintiffs fail to state a claim for violation of FHA. (Doc. No. 29-1 at 15.) As explained above, a robust casualty is required to show a disparate impact claim. *See ICP VI*, 135 S. Ct. at 2523. Again, Plaintiffs have failed to state a claim for violation of FHA against SDHC. First, Plaintiffs allege that the combined effort of the County, City, and SDHC have had a disproportionate effect on the Affected Communities by

concentrating minorities. However, this does not allege that SDHC's policy was the cause of racial disparities.

Plaintiffs argue that while CTCAC may approve tax credits, SDHC uses whether or not the building is tax-exempt as one of the main requirements to receive additional funding from SDHC. (Doc. No. 36 at 20.) However, Plaintiffs have failed to allege how this usage caused the statistical disparity. Accordingly, the Court **DISMISSES** Plaintiffs' claim for violation of FHA against SDHC.

   *iv.*  *42 U.S.C. § 1983*

SDHC alleges that Plaintiffs fail to state a claim for violation of Section 1983. As explained above, a Section 1983 claim cannot be based on a violation of state law. *See Galen*, 477 F.3d at 662. Second, Plaintiffs did not allege a violation of FHA as described above. Thus, Plaintiffs' Section 1983 fails since Plaintiffs failed to allege a violation of FHA. Third, as explained above, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee*, 250 F.3d at 686 (citation omitted). Plaintiffs have failed to allege that SDHC acted with an intent or purpose to discriminate against Plaintiffs. Accordingly, the Court **DISMISSES** Plaintiffs' claim for violation of Section 1983 against SDHC.

   *v.*  *California's FEHA*

As Plaintiffs' claim under the FHA fails, Plaintiffs claim for violation of FEHA also fails. *See Inestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012) (citing *Brown v. Smith*, 55 Cal. App. 4th 767, 780 (1997)). Thus, the Court **DISMISSES** Plaintiffs' claim for violation of FEHA against SDHC.

/ / /

/ / /

/ / /

/ / /

16

1

### vi.     Causes of Actions Statute of Limitations

2  SDHC argues that each of Plaintiffs' causes of action are time barred under the
3 applicable statute of limitations. (Doc. No. 29-1 at 27.) The Court has outlined the
4 applicable statute of limitations for each cause of action above. Plaintiffs' complaint alleges
5 that SDHC's Choice Initiative was approved by HUD and made effective on July 1, 2010.
6 Accordingly, SDHC alleges that this is outside the two year statute of limitations for FHA
7 and equal protection claims under Section 1983, and one year for FEHA. However,
8 Plaintiffs have alleged that SDHC has passed multiple decisions within the limitations
9 period that concentrates extremely-low, very-low, and low-income housing in the Affected
10 Communities. Accordingly, the Court **DENIES** SDHC's motion to dismiss on the basis of
11 statute of limitations.

12

### vii.     Standing

13  SDHC asserts that Plaintiffs lack standing under each of the statutes because they
14 have not alleged a concrete and particularized injury to SDHC's conduct. (Doc. No. 29-1
15 at 28.) As explained above, Plaintiffs assert that they do in fact have standing because they
16 are local residents of the communities that are being adversely affected by the SDHC's
17 concentration of poverty. Plaintiffs do allege a causal connection. Plaintiffs allege that their
18 communities are impacted by the SDHC's alleged violations. Furthermore, Plaintiffs have
19 also alleged that a favorable outcome of this litigation will redress the alleged injury as
20 blocking future affordable housing projects would prevent further segregation.

21  Accordingly, the Court **DENIES** the SDHC's motion to dismiss on standing.

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1

*viii.   HUD as an Indispensable Party*

2

SDHC asserts that the complaint fails to name HUD, an indispensable party,

3

regarding allegations concerning the HCV program. (Doc. No. 29-1 at 30.) Federal Rule

4

of Civil Procedure 19 provides:

5

> (a) Persons Required to Be Joined if Feasible. (1) Required Party.

6

> A person who is subject to service of process and whose joinder

> will not deprive the court of subject-matter jurisdiction must be

7

> joined as a party if: (A) in that person's absence, the court cannot

> accord complete relief among existing parties; or (B) that person

8

> claims an interest relating to the subject of the action and is so

9

> situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to

10

> protect the interest; or (ii) leave an existing party subject to a

11

> substantial risk of incurring double, multiple, or otherwise

> inconsistent obligations because of the interest.

12

13

Fed. R. Civ. P. 19.

14

SDHC alleges that HUD must approve all activities and changes to activities under

15

the Amended and Restated Moving to Work Demonstration Agreement ("MTW

16

Agreement"). However, Plaintiffs allege that they are not attacking the plan approved by

17

HUD; rather, Plaintiffs argue SDHC overstepped the reach of the MTW Agreement and

18

subsequent Annual Plans approved by HUD. Accordingly, this case is distinguishable from

19

*Boles v. Greeneville Housing Authority*, where the court held that HUD would be

20

"deprive[d] [] of the right to defend the integrity of its administrative decisions." 468 F.2d

21

476, 479 (6th Cir. 1972). Accordingly, to continue without HUD does not impede on

22

HUD's interest in the MTW Agreement with SDHC. Thus, the Court does not find that

23

HUD is an indispensable party to this action.

24

*ix.   Dismissal of Gentry and Each Board Member*

25

Plaintiffs have named the SDHC as a defendant as well as Gentry and SDHC's seven

26

board members in their official capacity only. "An official-capacity suit is, in all respects

27

other than name, to be treated as a suit against the entity. It is not a suit against the official

28

personally, for the real party in interest is the entity." *Enriquez*, No. CV F 10-0581 AWI

DLB, 2010 WL 2490969, at *5; *see also Abbott*, 954 F. Supp. at 204 (noting that "[i]f both [the official capacity officer and the local government entity] are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant."). Accordingly, the Court **DISMISSES** Plaintiffs' complaint as to the individual Gentry and SDHC's seven board members.

## CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the County's motion to dismiss, **GRANTS in part** and **DENIES in part** the City's motion to dismiss, and **GRANTS in part** and **DENIES in part** SDHC's motion to dismiss. The Court finds that leave to amend would not be futile, and thus **GRANTS** leave to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Plaintiffs must file an amended complaint within **forty-five (45) days** of the date of this Order.

**IT IS SO ORDERED**.

Dated:  June 1, 2020

Hon. Anthony J. Battaglia
United States District Judge