1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICE BAKER, et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>                              Defendants. | Case No.:  19-CV-1013 JO (DEB)<br><br>**ORDER (1) GRANTING CITY OF SAN DIEGO AND HOUSING AUTHORITY OF THE CITY OF SAN DIEGO'S MOTION TO DISMISS, AND (2) GRANTING SAN DIEGO HOUSING COMMISSION'S MOTION TO DISMISS**<br><br>(ECF Nos. 79, 80) |

Defendants the City of San Diego and the Housing Authority of the City of San Diego (the "City Defendants") and Defendant the San Diego Housing Commission ("SDHC") have moved to dismiss Plaintiffs' Second Amended Complaint.  (*See* ECF Nos. 79 ("City Mot."), 80 ("SDHC Mot."), respectively (together, the "Motions"); *see also* ECF No. 78 ("SAC").)  The Court held a hearing on October 13, 2021.  (*See* ECF No. 87.)  For the reasons set forth below, the Court **GRANTS** the Motions.

## BACKGROUND

### I.    Factual Background

Plaintiffs are San Diego residents who live in the areas of Encanto and Southeastern San Diego (the "Affected Communities").  (SAC ¶ 18–25.)  The City

Defendants are comprised of the City of San Diego and the Housing Authority that governs Defendant SDHC. (*Id.* ¶ 26–27.) The SDHC is a corporate and political body established by the laws of the State of California. (*Id.* ¶ 28.)

Plaintiffs allege that the City Defendants and the SDHC used new zoning policies to implement and develop a disproportionate amount of low-income housing projects in the Affected Communities. (*Id.* ¶ 9.) Plaintiffs contend that the City Defendants implemented a strategy to "streamline the low-income and extremely low-income housing in the Affected Communities as quickly as possible." (*Id.* ¶ 34.) The alleged strategy served to "expedite and streamline development in the Affected Communities so it [would] be lucrative for developers at the expense of minority residents." (*Id.* ¶ 41.) Plaintiffs allege that the City Defendants have utilized a "disproportionate amount of deferral, waiver, and reimbursement agreements to make it more lucrative for developers to place low-income and extremely low-income housing in the Affected Communities." (*Id.* ¶ 85.)

## II.   Procedural History

On May 30, 2019, Plaintiffs filed this action against Defendants alleging violations of (1) the Federal Fair Housing Act ("FHA"), (2) 42 U.S.C. § 1983, and (3) the California Fair Employment and Housing Act ("FEHA"). On August 1, 2019, the City Defendants and the County of San Diego ("County"), the latter of which is no longer a party to the action, each filed a Motion to Dismiss. (ECF Nos. 26, 27.) On August 9, 2019, the SDHC also filed a Motion to Dismiss. (ECF No. 29.)

On June 1, 2020, the Honorable Anthony J. Battaglia granted in part and denied in part the City Defendants' and the SDHC's Motions to Dismiss and granted the County's Motion to Dismiss, providing Plaintiffs leave to amend. (ECF No. 44.) Judge Battaglia dismissed Plaintiffs' FHA claim against the City Defendants for failure to "establish a robust causal connection between the statistical disparity and the City's policy." (*See id.* at 12.) Judge Battaglia also dismissed Plaintiffs' FHA claim against the SDHC for failure to allege a robust causal connection between the statistical disparity and the

SDHC's policy.  (*See id.* at 15–16.)  Additionally, Judge Battaglia dismissed Plaintiffs' § 1983 claim against the SDHC.  (*See id.* at 8.)

On July 17, 2020, Plaintiffs filed a First Amended Complaint against the City Defendants and the SDHC.  (ECF No. 48.)  On October 6, 2020, the case was transferred to the undersigned.  (ECF No. 55.)  On March 2, 2021, the Court granted Defendants' Motions to Dismiss and dismissed without prejudice Plaintiffs' First Amended Complaint.  (ECF No. 75.)

On April 22, 2021, Plaintiffs filed the operative Second Amended Complaint alleging violations of (1) the FHA – Disparate Impact; (2) the FHA – Perpetuation of Segregation; (3) 42 U.S.C. § 1983; and (4) the FEHA.  (ECF No. 78.)  On June 21, 2021, the City Defendants and the SDHC filed the instant Motions to Dismiss.  (ECF Nos. 79, 80.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] / / /

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

## I.   Federal Housing Authority

Plaintiffs allege a violation of the FHA, 42 U.S.C. § 3601, because "Defendants are required to administer programs . . . in a manner that furthers the policies of the Fair Housing Act." (SAC ¶ 179.) To bring a claim under the FHA, Plaintiffs must allege a theory of disparate treatment or disparate impact. *See Gamble v. City of Escondido*, 104 F.3d 300, 304–05 (9th Cir. 1997). To make out a claim for disparate impact, the plaintiff has the burden to "establish a prima facie case of disparate-impact discrimination under the FHA." *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, / / /

17 F.4th 950, 960 (9th Cir. 2021).   To allege an FHA claim based on disparate impact, a plaintiff must demonstrate:

> (1) the existence of a policy, not a one-time decision, that is outwardly neutral; (2) a significant, adverse, and disproportionate effect on a protected class, of which the plaintiff is a member; and (3) robust causality that shows, beyond mere evidence of a statistical disparity, that the challenged policy, and not some other factor or policy, caused the disproportionate effect.

*Id.* at 962.   Disparate impact discrimination includes "actions by private or governmental bodies that create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason."   *See Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 503 (9th Cir. 2009).   "A disparate-impact claim relying on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity.   A robust causality requirement is important in ensuring that defendants do not resort to the use of racial quotas."   *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmties. Project, Inc. ("ICP VI")*, 576 U.S. 519, 521 (2015).   "A robust causality requirement ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create."   *Id.* at 542 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(k)).   "If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability. *ICP VI*, 576 U.S. at 527; *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009) (stating that "gross statistical disparities" alone will rarely be "sufficient to invalidate a challenged government action").   Robust causality "requires that plaintiffs prove with a preponderance of the evidence that the policy itself, and not some other factor . . . created or exacerbated a disproportionate effect."   *See Sw. Fair Hous. Council*, 17 F.4th at 962.

/ / /

1

***A.      The City of San Diego and Housing Authority of the City of San Diego***

Previously, the Court found that Plaintiffs had failed to "adequately allege how the challenged policies of the City and SDHC have caused the claimed statistical disparity." (*See* ECF No. 75 at 4.)   In their Second Amended Complaint, Plaintiffs add allegations regarding the impact of the Community Plans, (SAC ¶¶ 37–40); a streamlined review process pursuant to the California Environmental Quality Act, (*id.* ¶ 70); the Expedite Program, (*id.* ¶ 90); City Ordinances No. 20916 and No. 20917, (*id.* ¶ 110–11); and Resolution No. 313066.   (*Id.* ¶ 113.)   First, Plaintiffs allege that amendments to the Community Plans led to increases in low-income and extremely low-income housing with "severe limits on commercial, industrial and office development."   (*Id.* ¶ 38.) Second, Plaintiffs allege the City Defendants adopted a plan to "streamline the review process for proposed new development projects" which were previously subject to discretionary review and now would provide automatic approval. (*Id.* ¶¶ 70–71.)   Third, Plaintiffs allege the Expedite Program streamlined the building permitting process and removed it altogether for some building developments in the San Diego Promise Zone, which includes the Affected Communities.  (*Id.* ¶ 90.)  Fourth, Plaintiffs allege Ordinance No. 20916 provided incentives for developers to construct density above the maximum typically allowed if they do not request any waiver/incentive.   (*Id.* ¶ 110.)   Fifth, Plaintiffs allege Ordinance No. 20917 provided a streamlined environmental review process for projects with densities established by existing zoning, community plan, or general plan policies for which an Environmental Impact Report was already certified. (*Id.* ¶ 111.)      Sixth, Plaintiffs allege that Resolution No. 313066 approved the "recommendation to continue to preserve and expand low-income and very low-income housing in the Affected Communities." (*Id.* ¶ 113.)

Once again, Plaintiffs' allegations fall short under the Ninth Circuit's test.  To be sure, Plaintiffs' new allegations satisfy the first prong of the Ninth Circuit's test by alleging outwardly neutral policies that they do not allege are discriminatory on their face. (*See generally* SAC; *see also Sw. Fair Hous. Council, Inc.*, 17 F.4th at 962–63

(finding an outwardly neutral policy where the policy does not explicitly treat customers differently based on their membership in any "recognized protected class").)  Plaintiffs' allegations also satisfy the second prong because they include evidence demonstrating a statistical disparity between the Affected Communities and Non-Affected Communities. (*See* SAC ¶¶ 114–30; *see also Sw. Fair Hous. Council, Inc.*, 17 F.4th at 963 (relying on a comparison between "those affected and those unaffected by the facially neutral policy" to evaluate statistical disparity).)  But Plaintiffs' claims again fail the third prong because they do not prove a robust causal connection between the specific policies of the City Defendants and the alleged statistical disparity.  (*See generally* SAC; *see also ICP VI*, 576 U.S. at 543 (noting it is difficult to "establish causation because of the multiple factors that go into investment decisions about where to construct or renovate housing units").)

Here, Plaintiffs allege that the combined effect of these policies caused Encanto and Southeastern San Diego to receive more affordable housing units than eight Non-Affected Communities received combined.  (*See* SAC ¶ 118.)  Since 2015, 81% of the affordable housing units to be built were to be added in Southeastern San Diego.  (*See id.* ¶ 121.)  Nonetheless, the City Defendants contend that Plaintiffs have failed to meet the robust causality requirement between the alleged policy and the disparate impact.  (City MTD at 8.)  Although Plaintiffs specify the policies they believe have led to the alleged disparate impact, the essential nexus that it was the identified policies, and not some other factor, such as an "uncontrollable societal determinant[]" or "unchallenged policies of the defendant" that created the disparate effect is noticeably absent from the SAC.  *See Sw. Fair Hous. Council, Inc.*, 17 F.4th at 962.

In *Southwest Fair Housing Council, Inc.*, for example, the plaintiffs challenged the defendant's policy of increasing the security deposit for renters in its public housing units as compared to renters in its private housing units.  *Id.* at 965.  Key to the Ninth Circuit's finding in *Southwest Fair Housing Council, Inc.*, was the bifurcation of the defendant's customer base—making it clear that application of the increased security deposit for one

subset of the base was causing the adverse effects.  *Id.* at 966.  In contrast, the policies challenged in this case are applied citywide and not specifically to a certain subset of the population.  Because Plaintiffs fail to allege bifurcation or targeted application, they fail to clearly establish the requisite nexus.  *Cf. id.* (finding that a robust causality existed because the adverse effects of the policy were specifically applied to a subset of the defendant's customer base).  Therefore, Plaintiffs' additional allegations are insufficient to meet the robust causality requirement under the Ninth Circuit's pleading standard, and the Court **GRANTS** the City Defendants' Motion to Dismiss Plaintiffs' FHA claim for failure to state a claim.

### B.    *San Diego Housing Commission*

Plaintiffs also fail to allege facts sufficient to establish a robust causal connection between any specific policy of the SDHC and the alleged statistical disparity.  (*See generally* SAC.)  Plaintiffs challenge the SDHC's method of distributing federal funds, alleging that the SDHC has "leveraged federal funding to continue to concentrate poverty in the Affected Communities."  (*See id.* ¶ 152–53.)  In response, the SDHC argues that its policy of awarding funding based on points incentivizes developers to "propose low-income housing development in the Non-Affected Communities."  (SDHC Mot. at 12.)  Additionally, the SDHC notes that Plaintiffs fail to specify a policy that causes the alleged disparity in placement of low-income rental units in the Affected Communities as compared to the Non-Affected Communities.  (*Id.* at 13.)

The SDHC is correct: Plaintiffs make allegations based on statistical outcomes but fail to establish a nexus between any specific policy and the distribution of funds.  (*See generally* SAC.)  Absent a specific policy, Plaintiffs' allegations fail to meet the pleading standard.  *See ICP VI*, 576 U.S. at 542 ("A disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity.").  Thus, the Court **GRANTS** the SDHC's Motion to Dismiss Plaintiffs' FHA cause of action for failure to state a claim.

/ / /

## II.    § 1983

Plaintiffs allege a violation of 42 U.S.C. § 1983 because the "actions and omissions of Defendants have deprived Plaintiffs particular rights under the federal and state fair housing laws and the 14th Amendment's Equal Protection Clause." (SAC ¶ 194.) To establish a claim under § 1983, a plaintiff must allege "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Municipalities are "persons" under § 1983 and therefore can be held liable for violations. *Id.* (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1970)). A municipality may only be liable, however, when "execution of a government's policy or custom inflicts the injury." *Id.*

Here, Plaintiffs' § 1983 claim fails for two reasons. First, and as described above, Plaintiffs have not alleged facts sufficient to show that it was the execution of the City Defendants' or the SDHC's policies that caused the alleged violation of the FHA. Accordingly, Plaintiffs' § 1983 claims cannot be based on the alleged FHA violations. Further, a § 1983 claim may not be based on violations of a state law or regulation. *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007); *see also Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003).

Second, to the extent the § 1983 claim is based on the Fourteenth Amendment's Equal Protection Clause, that claim also fails. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *See id.* Here, although Plaintiffs have alleged that Defendants acted with intent or purpose to discriminate against Plaintiffs, they fail to

allege an invidious or discriminatory purpose underlying the City Defendants' or the SDHC's policies. At best, Plaintiffs' claims amount to a mere recitation of the elements of a cause of action, which is insufficient to sustain a claim. *See Ashcroft*, 556 U.S. at 663–64.

For both these reasons, the Court **GRANTS** Defendants' Motions and **DISMISSES** Plaintiff's § 1983 claims.

## III.   California Fair Employment and Housing Act

"Because FEHA is based on the Fair Housing Act, liability under the Fair Housing Act also supports liability under FEHA." *Iniestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012) (citing *Brown v. Smith*, 55 Cal. App. 4th 767, 780 (1997)). Accordingly, the Court **GRANTS** the Motions and **DISMISSES** Plaintiffs' FEHA claim.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** both the City Defendants' Motion to Dismiss (ECF No. 79) and the SDHC's Motion to Dismiss (ECF No. 80) and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Second Amended Complaint (ECF No. 78).

Plaintiffs **MAY FILE** an amended complaint curing the above enumerated deficiencies within <u>twenty-one (21) days</u> of the electronic docketing of this Order. *Should Plaintiffs fail timely to file an amended complaint, the Clerk of Court will enter judgment of dismissal without prejudice without further Order of the Court.*

**IT IS SO ORDERED.**

Dated: February 16, 2022

_____
Honorable Todd W. Robinson
United States District Judge